# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF GEORGIA
### AUGUSTA DIVISION

TONYA K. PATTERSON,          *
                             *
    Plaintiff,        *
                             *
       v.            *          CV 115-138
                             *
AJ SERVICES JOINT VENTURE I, *
LLP                          *
                             *
    Defendant.        *

_____

**O R D E R**

_____

Presently before the Court is Defendant's motion for summary judgment on all of Plaintiff's claims. (Doc. 31.) The Clerk of Court gave Plaintiff timely notice of the summary judgment motion and the summary judgment rules, of the right to file affidavits or other materials in opposition, and the consequences of default. (Doc. 38.) Therefore, the notice requirements of <u>Griffith v. Wainwright</u>, 772 F.2d 822, 825 (11th Cir. 1985) (per curiam), have been satisfied. Plaintiff filed a response brief, and Defendant filed a reply brief.[1] (Docs. 52, 53.) The time for filing materials in opposition has expired,

_____

[1] Defendant also filed a motion seeking to exclude, in whole or in part, several of the declarations filed by Plaintiff in opposition to Defendant's motion for summary judgment, while Plaintiff filed a motion seeking to withdraw and/or substitute several of the aforementioned declarations and submit an amended response brief. (Docs. 45, 46.) The Court resolved these motions, at least in part, through its Order dated September 30, 2016. (Doc. 51.)

and the motion is ripe for consideration. Upon consideration of the record evidence, relevant law, and the briefs of counsel, the Court **GRANTS** Defendant's motion for summary judgment.

## I. BACKGROUND

The present dispute arises out of Defendant's termination of Plaintiff's employment in April 2014. Plaintiff alleges that she was terminated on a pretextual basis approximately ten days after sustaining physical injuries at work (for which she filed a worker's compensation claim) and several days after requesting medical leave. Plaintiff maintains that Defendant's termination of her employment was an act of retaliation for taking medical leave as well as discrimination against her based upon her gender and her disabilities arising from these work-related injuries. Plaintiff instituted the instant suit on June 10, 2015, alleging violation of the Family and Medical Leave Act, 29 U.S.C. § 2601, *et seq.* ("FMLA"), the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.* ("ADA"), and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII"). Viewing the evidence and factual inferences in the light most favorable to Plaintiff, the relevant facts of this dispute are as follows.

Plaintiff was hired by Defendant as an administrative assistant pursuant to an offer letter dated December 4, 2011.

(Pl.'s Resp. to Def.'s St. of Mat. Facts ("PSMF"), Doc. 42-1, ¶ 16.)[2]  On January 1, 2012, Plaintiff began her employment with Defendant at the Moncrief Hospital located at Fort Jackson in Columbia, South Carolina.[3]  (Id.)  In March or April of 2012, Plaintiff was transferred to Defendant's worksite at the Dwight D. Eisenhower Army Medical Center at Fort Gordon in Augusta, Georgia ("Fort Gordon"), where she remained employed as an administrative assistant until her termination on April 24, 2014.[4]  (Id. ¶ 18.)  From August 6, 2012 through April 24, 2014, Plaintiff's direct supervisor was Defendant's Director of Environmental Services at Fort Gordon, Mr. Claude Edouard.  (Id. ¶¶ 21-22.)

---

[2] All material facts set forth in a moving party's statement of material facts that are supported by a citation to a particular part of materials in the record are deemed to be admitted unless controverted by a statement served by the opposing party containing its own citation to a particular part of materials in the record, although the Court retains discretion to consider other portions of the record. See FED. R. CIV. P. 56(c)(1); LR 56.1, SDGa.

[3] Defendant is a joint venture between American Eagle Protective Services Corporation and J&J Worldwide Services, Inc. and provides housekeeping and environmental services for medical centers owned and operated by the United States Army, including those facilities located at the Dwight D. Eisenhower Army Medical Center at Fort Gordon in Augusta, Georgia. (PSMF ¶¶ 1-2.)

[4] In her role as administrative assistant, Plaintiff's job duties included, *inter alia*, "prepar[ing] invoices, reports, memos, letters, [and] financial statements; fil[ing] and retriev[ing] corporate documents, reports and records; answer[ing] the telephones; maintain[ing] the record management systems; d[oing] basic book keeping work; issu[ing] employee checks and statements; compil[ing] employee time and payroll data from time sheets and other records; . . . review[ing] time sheets and other information to detect and reconcile payroll discrepancies; verif[ying] attendance, hours worked and pay adjustments; record[ing] employee information such as exemptions, transfers and resignations in order to maintain up to date payroll records; and prepar[ing] background security clearance procedures for new associates." (Doc. 52, at 4-5; Patterson Dep. at 33:2-37:16 & Ex. D-4; see also PSMF ¶ 19.)

In April 2013, while reviewing Defendant's personnel files, Mr. Edouard noticed that several employee evaluations had not been placed into their respective personnel files. (Id. ¶ 29; see also Dep. of Claude Edouard, Doc. 34, at 174:21-175:4, 183:3-184:8, 185:4-22.) On April 11, 2013, Mr. Edouard advised his direct supervisor, Defendant's Director of Operations, Mr. Curry Newton, that Mr. Edouard would "be doing a written note to file and to review with [Plaintiff] in regards to documents not being filed in a timely manner to personnel files." (PSMF ¶ 30; Edouard Dep., Ex. P-11.) On April 15, 2013, Mr. Edouard provided Plaintiff with a memorandum dated that same day in which he outlined Plaintiff's job duties and specifically noted that it was "imperative that employee records are kept up to date at all times . . . ." (PSMF ¶¶ 31-34; Dep. of Tonya K. Patterson, Doc. 33, Ex. D-7.) Plaintiff admits that she understood this memorandum to be a reprimand for her alleged failure to properly maintain employee files. (PSMF ¶ 36; Patterson Dep. at 67:10-69:23.)

On August 13, 2013, Mr. Edouard emailed Mr. Newton regarding whether Plaintiff should receive a pay raise. (PSMF ¶ 38; Edouard Dep., Ex. P-13.) In response, Mr. Newton wrote, "I thought you were going to get rid of her, also she has had multiple increases this year. I would say no to the anniversary increase." (PSMF ¶ 39; Edouard Dep., Ex. P-13.) In response

thereto, Mr. Edouard wrote, "Not going to get rid of her just yet. Trying to give her the opportunity to improve. Wouldn't be surprised if she looks into moving on once she realizes no raise." (PSMF ¶ 40; Edouard Dep., Ex. P-13.) On August 16, 2013, Mr. Edouard again emailed Mr. Newton regarding Plaintiff's alleged failure to satisfy her job duties. (PSMF ¶ 41; Edouard Dep., Ex. P-17.)

On April 1, 2014, Mr. Edouard issued an employee reprimand to Plaintiff. (PSMF ¶ 45; Patterson Dep., Ex. D-8.) In the April 1, 2014 reprimand, Mr. Edouard stated that he had pulled two different employee files and found that "not all noted reprimands were in [these] employee[s'] file[s]" and that these files "were not up to date with documents that had been submitted over a month ago to be placed in employee's files." (PSMF ¶ 45, Patterson Dep., Ex. D-8.) Mr. Edouard further stated, *inter alia*, that Plaintiff was "expected and required to update employee records with all documents presented NLT [*i.e.*, not later than] three (3) days from receipt of documents." (PSMF ¶ 45, Patterson Dep., Ex. D-8.) Plaintiff refused to sign the April 1, 2014 reprimand, stating that it was "bogus" as she had "file[d] all documents received immediately" or "had other obligations or responsibilities that prevent her from filing . . . documents in a timely manner." (PSMF ¶ 46; Patterson Dep., Ex. D-8; Decl. of Claude Edouard, Doc. 31-3, Ex. D.)

On April 3, 2014, Mr. Edouard drafted a memorandum regarding Plaintiff in which he stated that, *inter alia*, he had discovered deficiencies in Plaintiff's filings subsequent to issuing the April 1, 2014 employee reprimand to Plaintiff. (PSMF ¶ 47; Edouard Decl. ¶ 12 & Ex. D.)  On April 8, 2014, Mr. Edouard prepared another memorandum regarding Plaintiff, in which he stated that he had discovered that she had "not followed through on a consistent basis with the background verifications" for new hires by Defendant in alleged dereliction of her assigned duties.  (PSMF ¶ 51;[5] Edouard Decl. ¶ 13 & Ex. E.)  On April 11, 2014, Mr. Edouard prepared yet another memorandum regarding Plaintiff, in which he stated that Plaintiff had inquired of him as to whether she should be concerned for her job and whether she should be looking for other employment opportunities - both of which Mr. Edouard allegedly replied to in the affirmative.  (PSMF ¶ 52; Edouard Decl. ¶ 14 & Ex. F.)  Mr. Edouard further stated in this April

---

[5] Plaintiff baldly alleges that "the evidence tends to show that [several] memorand[a] [were] created after Plaintiff went out on medical leave," namely those memoranda dated April 8 & 11, 2014.  (See PSMF ¶¶ 51, 52.)  Plaintiff, however, offers no evidence in support of this claim, but rather directs the Court to "[s]ee [the] brief [in opposition to summary judgment] filed by Plaintiff herewith."  (See PSMF ¶ 52.)  Yet the Court is unable to locate any reference in Plaintiff's brief regarding this issue, let alone any evidence in the record contesting the date on which these memoranda were authored. Indeed, the only evidence conceivably related to this assertion is the testimony of Mr. Edouard that, on or about February 1, 2016, the computer on which he drafted his memoranda regarding Plaintiff failed.  (Edouard Dep. at 212:21-25, 215:11-217:10.)  Standing alone, however, this computer failure does not create a factual dispute as to the date these memoranda were created, particularly given that Plaintiff has never brought any concerns of spoliation to the Court's attention.

11, 2014 memorandum that he had informed Plaintiff that she would be replaced as administrative assistant at some point in the future due to her allegedly inconsistent performance. (Edouard Decl., Ex. F.) Plaintiff denies that the conversation referenced in this memorandum ever occurred. (Patterson Dep. at 105:6-21.)

On April 14, 2014, Plaintiff suffered work-related injuries to her knee, wrist, and shoulder after tripping over a telephone cord while at work. (PSMF ¶ 53.) After being notified of Plaintiff's accident, Mr. Edouard instructed Plaintiff to seek medical attention (which she did) and created a memorandum memorializing the event. (PSMF ¶ 54; Edouard Decl., Ex. G.) Later that day, Mr. Edouard sent an email to Defendant's Human Resources Director, Ms. Denise Garza, stating:

> Good afternoon. We are in the process of actively bringing on board a new Administrative Assistant for various reasons. The attached files and memorandums ["Administrative Assistant Issues.pdf"] will give you a clearer picture as to why. Please provide any input and/or feedback that you have so that we can take all appropriate actions/steps on our part, especially taking into consideration the "accident" that took place earlier today with [Plaintiff].

(Doc. 42-9.) Plaintiff did not return to work – either that day or at any other time - after her injury. Approximately three days after her injury, Plaintiff called Defendant to inquire

about receiving leave under the FMLA.[6] (PSMF ¶ 55; Patterson Dep. at 109:7-9, 110:4-25.) Plaintiff admits that she was "unable to perform her job, with or without restrictions, until October 2014." (PSMF ¶ 84; Patterson Dep. at 24:18-25:22, 112:24-113:25.)

On April 23, 2014, Mr. Edouard prepared another memorandum regarding Plaintiff. (PSMF ¶ 62; Edouard Decl., Ex. I.) In this memorandum, Mr. Edouard stated that he had discovered another alleged failure by Plaintiff to properly file written reprimands in an employee's personnel file. (PSMF ¶¶ 61-62; Edouard Decl., Ex. I.) He also stated that it was brought to his attention on April 22, 2014 that Plaintiff had allegedly failed to properly verify payroll entries and pay rates, which had led to overpayments to two employees for approximately nine months. (PSMF ¶¶ 58, 60, 62; Edouard Decl., Ex. I.)

On or about April 24, 2014, Mr. Edouard decided to terminate Plaintiff's employment. (PSMF ¶ 63.) That same day, Mr. Edouard prepared a written employee reprimand in which he restated his aforementioned allegations of Plaintiff's poor work performance set forth in those memorandum/reprimands dated April 15, 2013, April 1, 2014, and April 23, 2014, and announced his decision to terminate Plaintiff's employment effective that day. (PSMF ¶ 64; Edouard Decl., Ex. J.) Mr. Edouard then called

---

[6] Plaintiff also filed a workers' compensation claim in relation to this incident. (Compl. ¶ 7.)

Plaintiff and advised her of her termination (but did not give any reason for her termination). (PSMF ¶ 66; Patterson Dep. at 114:3-116:3, 119:1-16; Dep. of Curry Newton, Doc. 37, Exs. P-30 & P-32.) On April 28, 2014, Mr. Edouard prepared a termination/transfer form memorializing Plaintiff's termination, wherein he repeated the content of the April 24, 2014 reprimand and checked the box thereon entitled "Fired – Unable to Perform Job Satisfactorily" as the reason for Plaintiff's termination. (PSMF ¶ 67; Patterson Dep., Ex. D-12.)

On June 30, 2014, Plaintiff submitted an intake questionnaire to the United States Equal Employment Opportunity Commission ("EEOC"). (PSMF ¶ 95; Decl. of Patrick Lail, Ex. A.) On August 19, 2014, Plaintiff filed a Charge of Discrimination ("Charge") with the EEOC.[7] (PSMF ¶¶ 92-94; Doc. 1-2.) On or about March 30, 2015, Plaintiff received a "Dismissal and Notice of Rights" from the EEOC in response to Plaintiff's Charge, which noted that the EEOC was "closing its file," and that "[b]ased upon its investigation, the EEOC is unable to conclude

---

[7] In her Charge, Plaintiff states: "I began working for [Defendant] on August 16, 2011, as an Administrative Assistant. On April 14, 2014, I suffered an on the job injury and went on medical leave. I am a person with a disability and made company officials aware of my medical condition. On April 24, 2014, I was discharged. I was told by Claude Edouard, Director, that I was discharged for failure to submit leave to cover my absence. I believe I have been discriminated against because of my sex (female), in violation of Title VII of the Civil Rights Act of 1964, as amended, and because of my disability, in violation of Title I of the Americans with Disabilities Act of 1990, as amended." (Doc. 1-2.) Notably, Plaintiff checked boxes indicating that she was asserting claims for discrimination based on her "sex" and her "disability," but did not check the box for "retaliation." (Id.)

9

that the information obtained establishes violations of the statutes." (Doc. 1-1.)

On June 10, 2016, Plaintiff instituted the present action by filing her complaint in the United States District Court for the Northern District of Georgia, Civil Action No. 1:15-CV-02072-WSD-JSA. (Doc. 1.) On July 27, 2015, Defendant filed a motion to transfer this action to this Court pursuant to 28 U.S.C. § 1404, which the United States Magistrate Judge for the Northern District of Georgia granted on August 31, 2015. (Doc. 8.)

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The Court shall grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law." Hickson Corp. v. N. Crossarm Co., 357 F.3d 1256, 1259, 1260 (11th Cir. 2004); FED. R. CIV. P. 56(c). The "purpose of summary judgment is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Matsushita Elec.

Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (internal citation omitted).

"[The] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record before the court] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If — and only if — the movant carries its initial burden, the non-movant may avoid summary judgment by demonstrating that there is indeed a genuine issue as to the material facts of its case. Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991). Facts are "material" if they could affect the outcome of the suit under the governing substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute of those material facts "is 'genuine' . . . [only] if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Id.

When ruling on the motion, the Court must view all the evidence in the record in the light most favorable to the non-moving party and resolve all factual disputes in the non-moving party's favor. Matsushita, 475 U.S. at 587. The Court must also avoid weighing conflicting evidence. Anderson, 477 U.S. at 255; McKenzie v. Davenport-Harris Funeral Home, 834 F.2d 930, 934 (11th Cir. 1987). Nevertheless, the non-moving party's

11

response to the motion for summary judgment must consist of more than conclusory allegations, and a mere "scintilla" of evidence will not suffice. Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990); Pepper v. Coates, 887 F.2d 1493, 1498 (11th Cir. 1989). "The non-moving party cannot create a genuine issue of material fact through speculation, conjecture, or evidence that is 'merely colorable' or 'not significantly probative.'" Bryant v. Dougherty Cty. Sch. Sys., 382 F. App'x 914, 917 (11th Cir. 2010) (citing Shiver v. Chertoff, 549 F.3d 1342, 1343 (11th Cir. 2008; Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249–50 (1986))).

### III. DISCUSSION

In the present action, Plaintiff alleges that, by terminating her employment approximately ten days after she injured herself at work (and seven days after she asked for FMLA leave), Defendant: (a) interfered with her rights under the FMLA and/or retaliated against her for taking leave in violation of the FMLA; (b) failed to provide her with reasonable accommodations and/or retaliated against her medical condition in violation of the ADA; and/or (c) discriminated against her based on her gender in violation of Title VII by way of the aforementioned FMLA & ADA violations. Defendant, in turn, seeks summary judgment on each and every one of Plaintiff's claims,

alleging that Plaintiff's termination was in response to her poor performance (evidence of which was allegedly discovered, at least in part, during this ten-day timeframe), and that Plaintiff has failed to demonstrate a genuine issue of material fact as to this proffered reason.

## A. FMLA CLAIMS

Under the FMLA, an eligible employee is, *inter alia*, "entitled to a total of 12 workweeks of leave during any 12-month period . . . [b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee" and to be reinstated to her original (or an equivalent) position "on return from such leave." 29 U.S.C. §§ 2612(a)(1)(D), 2614(a)(1). "To protect these rights, the FMLA creates a private right of action." White v. Beltram Edge Tool Supply, Inc., 789 F.3d 1188, 1191 (11th Cir. 2015). One such cause of action is an "interference" claim, in which an employee alleges that her employer interfered with her FMLA rights. See 29 U.S.C. § 2615(a)(1) ("It shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter."). Another cause of action is a "retaliation" claim, in which an employee alleges that her employer discriminated against her because she exercised her FMLA rights. See 29 U.S.C. § 2615(a)(2) ("It shall be unlawful for any

13

employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter."). Because interference and retaliation FMLA claims have different elements, the Court addresses each claim in turn.

## 1. FMLA INTERFERENCE CLAIM

"An interference claim has two elements: (1) the employee was entitled to a benefit under the FMLA, and (2) her employer denied her that benefit." Beltram Edge Tool Supply, Inc., 789 F.3d at 1191 (citing Krutzig v. Pulte Home Corp., 602 F.3d 1231, 1235 (11th Cir. 2010)). Notably, an employer's motives are irrelevant to an interference claim. Id. at 1191 n.2 ("An employer may be liable for interference despite good intentions; its 'motives are irrelevant.'" (quoting Krutzig, 602 F.3d at 1235)). An employee's rights under the FMLA, however, are not absolute. Indeed, an employee may be terminated without violating the FMLA "if the employee would have been dismissed regardless of any request for FMLA leave." Krutzig, 602 F.3d at 1236. Moreover, "the FMLA guarantees only twelve weeks of leave, [29 U.S.C.] § 2612(a)(1), and if after twelve weeks the employee cannot perform an essential job function, she is not entitled to reinstatement, 29 C.F.R. § 825.216(c)." Beltram Edge Tool Supply, Inc., 789 F.3d at 1197.

Here, Plaintiff's interference claim fails as a matter of law because she has explicitly admitted that she would have been unable to return to work, with or without restrictions, until more than twelve weeks after initially taking FMLA leave. See id.; see also Edgar v. JAC Prod., Inc., 443 F.3d 501, 509-514 (6th Cir. 2006) (holding that, because an employer's intent is not a relevant consideration in an FMLA interference claim, undisputed information obtained subsequent to an adverse employment action that an employee would have been unable to return to work at the end of the 12-week statutory leave period provides a defense as a matter of law to a FMLA interference claim, but that such information does not provide an absolute defense to a FMLA retaliation claim (but may limit the relief to which the employee is entitled to under a retaliation claim)). Plaintiff injured herself at work on April 14, 2014 and explicitly admits that she would have been unable to return to work, with or without restrictions, until at the earliest sometime in September 2014. (See Patterson Dep. at 24:18-25:22, 105:22-106:4, 112:24-113:25; see also PSMF ¶¶ 53, 84.) Even assuming *arguendo* that the twelve weeks of leave guaranteed to Plaintiff under the FMLA did not begin to run until she formally inquired regarding obtaining FMLA leave on April 17, 2014, her statutorily-guaranteed leave would have ended on July 10, 2014, well short of the date she admits she could have returned to

work. Accordingly, Plaintiff had no right to reinstatement under the FMLA and therefore her interference claim fails as a matter of law.[8]

## 2. FMLA RETALIATION CLAIM

To prove FMLA retaliation, an employee must show that her employer intentionally discriminated against her for exercising an FMLA right. Martin v. Brevard Cty. Pub. Sch., 543 F.3d 1261, 1267 (11th Cir. 2008) (citing 29 U.S.C. § 2615(a)(2); 29 C.F.R. § 825.220(c)). "Unlike an interference claim, an employee 'bringing a retaliation claim faces the increased burden of showing that [her] employer's actions were motivated by an impermissible retaliatory or discriminatory animus.'" Id. at 1267-68 (quoting Strickland v. Water Works & Sewer Bd. of City of Birmingham, 239 F.3d 1199, 1207 (11th Cir. 2001)).

Absent direct evidence of retaliatory intent,[9] courts apply the burden-shifting framework established by the Supreme Court

---

[8] Plaintiff baldly alleges that, "[u]nder the policies and procedures of [Defendant], [Plaintiff] would have remained on Family Medical Leave for up to six months." (Doc. 52 at 20.) Even ignoring that this argument is not factually supported by the record, (see Garza Dep., Ex. 37, at 28-32, 38 (sections of Defendant's employee handbook explaining its leave of absence policies)), it is not supported by relevant law. See 29 U.S.C. § 2612(d)(2) (allowing employers to require their employees to substitute any accrued leave for leave provided under the FMLA); Slentz v. City of Republic, Mo., 448 F.3d 1008, 1010 (8th Cir. 2006) ("Under the FMLA, twelve weeks of leave is both the minimum the employer must provide and the maximum that the statute requires."). As such, even if Plaintiff's factual allegations were true, she would have a breach of contract claim as opposed to an FMLA claim. To allow otherwise "would unduly and unfairly burden employers." Strickland v. Water Works & Sewer Bd. of City of Birmingham, 239 F.3d 1199, 1206 (11th Cir. 2001) ("To balance the needs of employers and sick employees, Congress intended that the FMLA provide employees with a minimum entitlement of 12 weeks of leave, while protecting employers against employees tacking their FMLA entitlement on to any . . . leave benefit offered by the employer.").

in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973).

<u>Martin</u>, 543 F.3d at 1268 (citing <u>Brungart v. BellSouth</u>

<u>Telecomms., Inc.</u>, 231 F.3d 791, 798 (11th Cir. 2000)).  "Under

that approach, an employee claiming FMLA retaliation must show

that (1) [s]he engaged in statutorily protected activity, (2)

[s]he suffered an adverse employment decision, and (3) the

decision was causally related to the protected activity."  <u>Id.</u>

(citing <u>Brungart</u>, 231 F.3d at 798).  "Once the employee

establishes a prima facie case of retaliation, the burden shifts

to the employer to articulate a legitimate reason for the

adverse action."  <u>Id.</u> (citing <u>Hurlbert v. St. Mary's Health Care</u>

<u>Sys., Inc.</u>, 439 F.3d 1286, 1297 (11th Cir. 2006)); <u>see also</u>

<u>Miles v. M.N.C. Corp.</u>, 750 F.2d 867, 869 (11th Cir. 1985) ("The

---

[9] Despite Plaintiff's arguments to the contrary, this is not a direct evidence case.  Direct evidence is evidence that, if believed, proves the existence of a fact without inference or presumption.  <u>Wilson v. B/E Aerospace, Inc.</u>, 376 F.3d 1079, 1086 (11th Cir. 2004) (citations omitted).  "Only the most blatant remarks, whose intent could mean nothing other than to discriminate on the basis of some impermissible factor constitute direct evidence of discrimination."  <u>Id.</u> (quotations and citations omitted); <u>see also</u> <u>Merritt v. Dillard Paper Co.</u>, 120 F.3d 1181, 1189-90 (11th Cir. 1997) (collecting examples of direct evidence of discrimination).  "If the alleged statement suggests, but does not prove, a discriminatory motive, then it is circumstantial evidence."  <u>Wilson</u>, 376 F.3d at 1086 (citations omitted).  Here, without any further explanation, Plaintiff contends that she has "provided direct evidence of Defendant's discriminatory intent" in the form of Mr. Edouard's email to Ms. Garza dated April 14, 2014.  (Doc. 52 at 22; <u>see also</u> Doc. 42-9 ("Good afternoon.  We are in the process of actively bringing on board a new Administrative Assistant for various reasons.  The attached files and memorandums will give you a clearer picture as to why. Please provide any input and/or feedback that you have so that we can take all appropriate actions/steps on our part, especially taking into consideration the 'accident' that took place earlier today with [Plaintiff].").)  But this evidence, at best, leaves it to the trier of fact to infer discrimination; therefore, this evidence is circumstantial and not direct.  <u>See</u>, <u>e.g.</u>, <u>Quigg v. Thomas Cty. Sch. Dist.</u>, 814 F.3d 1227, 1242 n.11 (11th Cir. 2016); <u>Earley v. Champion Int'l Corp.</u>, 907 F.2d 1077, 1081-82 (11th Cir. 1990).  Plaintiff has not introduced any other – and the Court is unable to locate any - direct evidence of discrimination in the record.

burden on the [employer] is one of production rather than persuasion."). "If the employer does so, the employee must then show that the employer's proffered reason was pretextual by presenting evidence 'sufficient to permit a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision.'" Id. (quoting Hurlbert, 439 F.3d at 1298); see also Haugabrook, 518 F. App'x 803, 807 (11th Cir. 2013) ("A proffered reason is not pretext for discrimination unless it is shown both that the reason was false *and* that discrimination was the real reason." (emphasis original) (citations omitted)). "A plaintiff may show pretext 'either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence.'" Diaz v. Transatlantic Bank, 367 F. App'x 93, 97 (11th Cir. 2010) (quoting Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 256 (1981)). To do so, "a plaintiff may point to 'weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions' in the employer's proffered reason." Id. (quoting Brooks v. Cnty. Comm'n of Jefferson Cnty., 446 F.3d 1160, 1163 (11th Cir. 2006)). Notably, while close temporal proximity between the protected activity and an adverse employment action is evidence of pretext, it is "probably insufficient to establish pretext by

itself," particularly where gradual adverse job actions began well before a plaintiff's protected activity. Hurlbert, 439 F.3d at 1298; Drago v. Jenne, 453 F.3d 1301, 1308 (11th Cir. 2006) ("We hold that, in a retaliation case, when an employer contemplates an adverse employment action before an employee engages in protected activity, temporal proximity between the protected activity and the subsequent adverse employment action does not suffice to show causation."); see also Saffold v. Special Counsel, Inc., 147 F. App'x 949, 951 (11th Cir. 2005) ("Saffold failed to present any evidence on the 'causal connection' element of her *prima facie* case because her supervisor simply followed through with the 'previously contemplated, though not yet definitively determined' plan to terminate Saffold based on her failure to produce revenue for the company."); Slattery v. Swiss Reinsurance Am. Corp., 248 F.3d 87, 95 (2d Cir. 2001), as amended (June 6, 2001) ("Where timing is the only basis for a claim of retaliation, and gradual adverse job actions began well before the plaintiff had ever engaged in any protected activity, an inference of retaliation does not arise."). Establishing the elements of the McDonnell Douglas framework alone is not necessarily sufficient to survive summary judgment, however, as the critical decision that must be made is whether the employee has "created a triable issue concerning the employer's discriminatory intent." Flowers v.

<u>Troup Cty., Ga., Sch. Dist.</u>, 803 F.3d 1327, 1336 (11th Cir. 2015) (citing <u>Smith v. Lockheed-Martin Corp.</u>, 644 F.3d 1321, 1328 (11th Cir. 2011)).

Here, even assuming *arguendo* that Plaintiff has established her *prima facie* case,[10] her FMLA retaliation claim fails because Plaintiff has failed to demonstrate that Defendant's proffered non-discriminatory reason for her termination (*i.e.*, Plaintiff's alleged poor work performance) is pretextual or otherwise demonstrates a genuine issue of material fact concerning Defendant's allegedly discriminatory intent. In support of her position that Defendant's proffered reason is pretextual, Plaintiff argues that: (i) contrary to Defendant's claims, Plaintiff was an exemplary employee and "that most of Plaintiff's reprimands are clearly a transference of blame from [Mr.] Edouard – who was failing to do his job – onto Plaintiff;" and (ii) Defendant (and Mr. Edouard) "had a pattern and practice of discriminating against female employees . . . particularly those who required medical leave accommodations" when compared to similarly-situated male employees."[11] (Doc. 52, at 25-30.)

---

[10] Defendant disputes whether Plaintiff has sufficiently established a *prima facie* claim under the <u>McDonnell Douglas</u> framework. (<u>See</u> Doc. 16, at 10-12.) Because Plaintiff's claims fail on their merits regardless of whether she has established a *prima facie* case, however, the Court will assume for the sake of its analysis, without deciding, that Plaintiff has established her *prima facie* case of FMLA retaliation.

[11] Plaintiff also argues in her conclusion that pretext has been demonstrated because Mr. Edouard had allegedly decided to terminate Plaintiff's employment as of April 14, 2014 while all of the stated reasons for terminating Plaintiff were discovered after that date (*i.e.*, Defendant's decision to

As an initial matter, the Court notes that federal anti-discrimination statutes do not allow federal courts "to second-guess [employers'] nondiscriminatory business judgments, nor does it replace employers' notions about fair dealing in the workplace with that of judges." See Flowers, 803 F.3d at 1338. Federal courts are not a "super-personnel department" that assesses "the prudence of routine employment decisions, no matter how medieval, high-handed, or mistaken." Id. (citing Alvarez v. Royal Atl. Developers, Inc., 610 F.3d 1253, 1266 (11th Cir. 2010)). Employers are free to make adverse employment decisions against their employees for "a good reason,

terminate Plaintiff predates the existence of the reasons given for her termination). (See Doc. 52, at 30 ("As of 4:58 [pm] Monday[,] April 14, 2014, [Mr.] Edouard had decided to terminate Plaintiff. Therefore, the stated reasons for terminated [sic] Plaintiff - all of which were discovered April 15 or later - cannot be true."); see also Doc. 42-9 ("Good Afternoon. We are in the process of actively bringing on board a new Administrative Assistant for various reasons. The attached files and memorandums ["Administrative Assistant Issues.pdf"] will give you a clearer picture as to why. Please provide any input and/or feedback that you have so that we can take all appropriate actions/steps on our part, especially taking into consideration the 'accident' that took place earlier today with [Plaintiff].").) As an initial matter, Plaintiff has neglected to include a copy of the "Administrative Assistant Issues.pdf" document referenced in the email to which she refers, thereby depriving the Court of any insight as to Mr. Edouard's intentions and/or his reasoning for bringing on a new administrative assistant. (See Doc. 42-9.) More importantly, however, the email to which Plaintiff is referring does not actually state that Mr. Edouard intended to terminate Plaintiff's employment that day, but rather that he was "in the process" of bringing a new Administrative Assistant "on board." (Id.) Plaintiff's argument also ignores that Mr. Edouard specifically refers in her final reprimand dated April 24, 2014 - as well as in the termination form dated April 28, 2014 - to the prior memoranda/reprimands from April 16, 2013 and April 1, 2014. (See Edouard Decl., Ex. J; Patterson Dep., Ex. D-12; see also Patterson Dep., Exs. D-7 & D-8.) Plaintiff also ignores those memoranda dated April 3, 8, & 11, 2014, in which Mr. Edouard, inter alia, notes alleged deficiencies in Plaintiff's performance. (See Edouard Decl. Exs. D, E, F.) Finally, even ignoring all of these issues, Plaintiff has explicitly admitted that "[o]n or about April 24, 2014, Mr. Edouard decided to terminate Plaintiff's employment." (PSMF ¶ 63.)

a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its [decision] is not for a discriminatory reason." Id. (citing Nix v. WLCY Radio/Rahall Commc'ns, 738 F.2d 1181, 1187 (11th Cir. 1984)). "A plaintiff is not allowed to recast an employer's proffered nondiscriminatory reasons or substitute his business judgment for that of the employer. Provided that the proffered reason is one that might motivate a reasonable employer, an employee must meet that reason head on and rebut it, and the employee cannot succeed by simply quarreling with the wisdom of that reason." Chapman v. AI Transp., 229 F.3d 1012, 1030 (11th Cir. 2000). As stated by the Eleventh Circuit, "[i]n analyzing issues like this one, we must be careful not to allow . . . plaintiffs simply to litigate whether they are, in fact, good employees." Alvarez, 610 F.3d at 1266 ("The question to be resolved is not the wisdom or accuracy of [the employer's] conclusion that [the employee's] performance was unsatisfactory, or whether the decision to fire her was prudent or fair. Instead, our sole concern is whether unlawful discriminatory animus motivated the decision." (internal quotations and citations omitted)).

Here, Plaintiff disputes the evidence indicating that her poor work performance was the actual reason she was terminated. Mr. Edouard reprimanded Plaintiff for her alleged poor performance on at least two occasions and prepared numerous

memoranda/reprimands alleging deficient performance. Plaintiff disputes the veracity of these alleged deficiencies and maintains that she performed her job duties in an overall exemplary fashion and that any allegations to the contrary are simply blame-shifting by Mr. Edouard for his own inadequacies and failures. To the extent that Plaintiff is alleging that she was fired for Mr. Edouard's own mistakes, this argument is unavailing as it is nothing more than a claim that Defendant made the wrong decision based on inaccurate information. Plaintiff's burden is not to show that Defendant's reasons for terminating her employment were ill-founded or based on inaccurate information, but rather that unlawful discrimination was the motivating factor. See Chapman, 229 F.3d at 1030; Haugabrook, 518 F. App'x at 807 ("A proffered reason is not pretext for discrimination unless it is shown both that the reason was false *and* that discrimination was the real reason.") (emphasis original) (citations omitted); Alvarez, 610 F.3d at 1267 ("Royal Atlantic's proffered reason for firing Alvarez was that her performance was unsatisfactory. Even if Alvarez could show it was satisfactory by some objective standard, she has not raised a genuine issue of material fact as to the true reason she was fired. . . . So far as job discrimination law is concerned, [Alvarez's supervisor] was within her rights to insist on a controller who could whip the company's books into

shape overnight while accommodating her own prickly personality and performing every task perfectly, even if there was little or no chance she would ever find such a miracle worker. She was free to set unreasonable or even impossible standards, as long as she did not apply them in a discriminatory manner."); see also Wallace v. SMC Pneumatics, Inc., 103 F.3d 1394, 1399 (7th Cir. 1997) (holding that "embarrassing" but non-actionable reasons for terminating an employee include "nepotism, personal friendship, the plaintiff's being a perceived threat to his superior, a mistaken evaluation, the plaintiff's being a whistleblower, the employer's antipathy to irrelevant but not statutorily protected personal characteristics, *a superior officer's desire to shift blame to a hapless subordinate* . . . or even an invidious factor but not one outlawed by the statute under which the plaintiff is suing; . . . or there might be no reason" (emphasis added)). To the extent that Plaintiff argues that Mr. Edouard's complaints regarding her job performance (or even his beliefs as to the extent of her job duties) have no basis in reality, these arguments are similarly unavailing because Plaintiff has put forth no evidence – as opposed to conjecture – that he and/or Defendant did not honestly believe Plaintiff's performance was deficient (or that her job duties extended to those areas alleged to be deficient). See Alvarez, 610 F.3d at 1266 ("The inquiry into pretext centers on the

employer's beliefs, not the employee's beliefs and, to be blunt about it, not on reality as it exists outside of the decision maker's head. The question is not whether it really was [the employee's] fault that assignments were not completed on time, or whether she did delegate excessively, or whether she was aggressive and rude to her colleagues and superiors, or whether she actually lost an important document or truly did fall asleep at her desk. The question is whether her employers were dissatisfied with her for these or other nondiscriminatory reasons, even if mistakenly or unfairly so, or instead merely used those complaints about [the employee] as cover for discriminating against her because of her [protected characteristic]." (internal quotations and citations omitted)); Damon v. Fleming Supermarkets of Florida, Inc., 196 F.3d 1354, 1363 n.3 (11th Cir. 1999) ("An employer who fires an employee under the mistaken but honest impression that the employee violated a work rule is not liable for discriminatory conduct."); see also Earley v. Champion Int'l Corp., 907 F.2d 1077, 1081 (11th Cir. 1990) ("To survive summary judgment, the plaintiff must then present concrete evidence in the form of specific facts which show that the defendant's proffered reason is mere pretext. Mere conclusory allegations and assertions will not suffice." (citations omitted)).

Plaintiff's allegations that Defendant "had a pattern and practice of discriminating against female employees . . . particularly those who required medical leave accommodations" when compared to similarly-situated male employees are similarly unavailing. Plaintiff asserts that Defendant "established a pattern and practice of terminating employees while they were out on medical leave," by having "terminated no less than seven women while they were on medical leave."[12] (Doc. 52, at 28, 30.) In support of this conclusion, Plaintiff identifies six women, other than herself, who were allegedly "fired in connection with medical leave for an injury," namely Marisol Screen, Kenyatta

---

[12] To the extent that Plaintiff is attempting to use the termination of these six other individuals as statistical evidence of discrimination, Plaintiff has not controlled for external factors or applied rigorous statistical analysis to these anecdotal figures that would indicate their reliability. See Mitchell v. City of LaFayette, 504 F. App'x 867, 870 (11th Cir. 2013) (citations omitted) ("Absent any analytical foundation, statistical evidence is virtually meaningless, and thus, cannot have any probative value."); see, e.g., Howard v. BP Oil Co., 32 F.3d 520, 524 (11th Cir. 1994) (that no black employees were present in predominately white area is only relevant to discrimination analysis if plaintiff presents evidence as to how many black applicants applied and were rejected along with evidence of the success rate of equally qualified white applicants, as "[a]necdotal information is no substitute for meaningful statistical analysis"); Hinson v. Clinch County, Georgia Bd. of Educ., 231 F.3d 821, 827-28 (11th Cir. 2000) (that plaintiff was first female principal in county was not evidence of gender discrimination absent evidence of how many other women applied and what their qualifications were or of the track record of unremoved males); Evans v. McClain of Georgia, Inc., 131 F.3d 957, 962 (11th Cir. 1997) (employee's anecdotal evidence that, despite employing 650 employees in eight plants, employer had only had three black supervisory employees, was not evidence of discriminatory motive with respect to employee's claims of failure to promote absent analytical foundation). Here, Plaintiff has not provided any information on the total number of individuals employed by Defendant, let alone information concerning the overall demographics of individuals terminated by Defendant while on FMLA leave or other relevant statistics, during the relevant time period. Accordingly, the Court finds that Plaintiff's figures are unavailing to the instant discrimination analysis and do not show that Defendant's proffered reasons for her termination are pretext for discrimination. See Mitchell, 504 F. App'x at 870.

Herndon, Audrey Williams, Christa Fulkerson, Marvenia President, and Leslie Onusic.[13] (Doc. 52, at 19, 28; see also Declaration of Christa Fulkerson, Doc. 42-2; Amended Declaration of Marvenia President, Doc. 46-1; Declaration of Kenyatta Herndon, Doc. 42-4; Amended Declaration of Marisol Screen, Doc. 46-2.) Yet to reach the conclusion that these other individuals were "fired *in connection with* medical leave for an injury" (*i.e.*, *because* they were women who took FMLA leave), (doc. 52, at 19 (emphasis added)), and thus to draw an inference of discriminatory intent from Plaintiff's own termination based on this evidence, would require unwarranted speculation.[14] Plaintiff has produced no probative evidence demonstrating that a discriminatory-based animus actually factored into Defendant's decision to terminate Plaintiff or these other individuals, such as remarks or statements indicative of an impermissible discriminatory nature[15]

---

[13] The Court notes that Ms. Screen has her own pending lawsuit against Defendant for alleged violations of the FMLA, ADA, and Title VII, namely *Screen v. AJ Services Joint Venture I, LLP*, Case No. 1:16-CV-022-JRH-BKE (S.D. Ga. filed Feb. 25, 2016). Misses Herndon, Williams, Fulkerson, and President also brought their own lawsuit against Defendant for alleged violations of the FMLA, namely *Herndon et al. v. AJ Services Joint Venture I, LLP*, Case No. 1:16-CV-001-JRH-BKE (S.D. Ga. dismissed Nov. 29, 2016), but have stipulated to the dismissal of such claims with prejudice pursuant to Federal Rule of Civil Procedure 41(a)(1)(A). (See Herndon et al. v. AJ Services Joint Venture I, LLP, Docs. 37, 38.)

[14] In effect, Plaintiff is arguing that, because these other women were terminated while on (or shortly after returning from) FMLA leave, these women must have been discriminated against, and conversely, because she was terminated while on FMLA leave, she too must have been the victim of discrimination.

[15] Plaintiff takes issue with Mr. Edouard's alleged use of the phrase "conniving females" and Mr. Newton's suggestion in August 2013 "that terminating [Plaintiff] may 'do something to stop the rumor mill,'" alleging that these statements "make [Defendant's] management's attitude towards women apparent." (See Doc. 52 at 19; see also Edouard Dep. at 267:3-268:4 & Ex. P-

or the existence of any harbored bias against those who exercise their rights under the FMLA.[16] Such conclusory allegations are not sufficient to create a genuine issue of material fact or otherwise sustain Plaintiff's burden. See Kernel Records Oy v. Mosley, 694 F.3d 1294, 1301 (11th Cir. 2012) ("Although all justifiable inferences are to be drawn in favor of the nonmoving

---

[17] (email from Mr. Edouard to Mr. Newton stating "[t]o make a long story short, there goes the conniving that we had both talked about" in reference to Plaintiff's alleged statements that tasks being assigned to her were not part of her job description); Newton Dep. at 62:13-63:12 & Ex. P-13 (email from Mr. Newton to Mr. Edouard where, in response to Mr. Edouard's statement that he was "[n]ot going to get rid of [Plaintiff] just yet [because he is] [t]rying to give her the opportunity to improve", Mr. Newton stated "[m]ight stop some of the rumors if she was gone . . . .").) Yet in reviewing the entirety of the related lines of questioning in Mr. Edouard's and Mr. Newton's respective depositions, it is clear that these comments are not the silver bullet that Plaintiff hopes them to be. (See Edouard Dep. at 265:12-274:24; Newton Dep. at 51:2-66:17.) Indeed, Mr. Edouard stated that the only person to whom he had ever referred to as "conniving" was Plaintiff. (Edouard Dep. at 272:4-273:2.) Mr. Edouard also testified that he had never actually used the phrase "conniving female" when speaking to Mr. Newton about Plaintiff, and a plain reading of Mr. Edouard's testimony and the related email wherein he refers to Plaintiff's conduct as "conniving" makes clear that he was referring to Plaintiff's alleged efforts to undermine his authority rather than a derogatory comment against women generally. (See Edouard Dep. at 274:3-24.) As to Mr. Newton's comments, they are irrelevant given that Plaintiff admits it was Mr. Edouard – not Mr. Newton – who decided to terminate Plaintiff's employment approximately eight months after these comments were made. (PSMF ¶¶ 63, 87.) Moreover, Plaintiff has put forth no evidence that would support an inference that referring to an individual as "conniving" or as being the source of a "rumor mill" has a discriminatory connotation or otherwise refers to Plaintiff's gender, disability, and/or her exercise of her rights under the FMLA. Accordingly, the Court finds that these comments do not create a genuine issue of material fact as to whether Defendant's proffered reasons for Plaintiff's termination are pretextual. See Bryant, 382 F. App'x at 917.

[16] Plaintiff alleges that Mr. Edouard has previously been arrested for acts of domestic violence on three occasions and that such information was known to Defendant at the time it hired Mr. Edouard. (See Newton Dep. at 126:11-128:23.) While these acts of violence, if true, are reprehensible, the Court finds that they are "merely colorable" and "not significantly probative" of whether the termination of Plaintiff was for a discriminatory purpose. See Bryant, 382 F. App'x at 917. Similarly, the Court finds that Ms. Onusic's testimony that on at least three to five occasions she witnessed Mr. Edouard become "so enraged that he literally would have to walk out of the office" when issuing reprimands to female employees, (Onusic Dep. at 25:1-29:8), is not significantly probative of whether Plaintiff's termination was motivated by an improper animus.

party, inferences based upon speculation are not reasonable. Evidence that is merely colorable, or is not significantly probative of a disputed fact cannot satisfy a party's burden." (internal quotations and citations omitted)). Nor has Plaintiff presented a "convincing mosaic of circumstantial evidence that would allow a reasonable jury to infer intentional discrimination by the decisionmaker." See Washington v. United Parcel Serv., Inc., 567 F. App'x 749, 752 (11th Cir. 2014) (citing Smith v. Lockheed-Martin Corp., 644 F.3d 1321, 1328 (11th Cir. 2011)).

As to Plaintiff's assertions that a discriminatory animus can be gleaned from Mr. Edouard's allegedly more favorable treatment of Defendant's male employees, Plaintiff has failed to show that these favorably-treated male employees: (a) held roles or were charged with responsibilities similar to those of Plaintiff; and (b) were accused of similar misconduct as Plaintiff. See Wilson v. B/E Aerospace, Inc., 376 F.3d 1079, 1091 (11th Cir. 2004) ("The plaintiff and the employee she identifies as a comparator must be similarly situated in all relevant respects. The comparator must be nearly identical to the plaintiff to prevent courts from second-guessing a reasonable decision by the employer." (internal quotations and citations omitted)); Felder v. Bradford Health Servs., 493 F. App'x 17, 20 (11th Cir. 2012) (plaintiff and alleged comparator

"were not similarly situated" where "they had different experiences, credentials, job duties, and qualifications" (citing Holifield v. Reno, 115 F.3d 1555, 1562 (11th Cir. 1997))); Washington, 567 F. App'x at 751-52 ("To establish a comparator in the disciplinary context, the quantity and quality of a comparator's misconduct must be nearly identical to the plaintiff's misconduct." (citing Maniccia v. Brown, 171 F.3d 1364, 1368-69 (11th Cir. 1999))). Accordingly, Plaintiff cannot avoid summary judgment on this ground. See Holifield, 115 F.3d 1555, 1562 (11th Cir. 1997) ("If a plaintiff fails to show the existence of a similarly situated employee, summary judgment is appropriate where no other evidence of discrimination is present.").

Accordingly, because Plaintiff has failed to present sufficient evidence that would allow a reasonable factfinder to conclude that the reasons given by Defendant for the termination of Plaintiff's employment were pretextual, Plaintiff's FMLA retaliation claim fails.

### B. ADA Claims

In Count II of her complaint, Plaintiff alleges that Defendant "discriminated against Plaintiff for [sic] violation of the [ADA]" by "failing to provide her with reasonable accommodations and by retaliating against her medical condition." (Compl. ¶¶ 11-12.) The ADA prohibits employers

from discriminating against "a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."[17] 42 U.S.C. § 12112(a). Discrimination under the ADA includes an employer's failure to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee . . . ."[18] 42 U.S.C. § 12112(b)(5)(A). Further, "[a]n employer may not retaliate against an employee for opposing any employment practice made unlawful by the ADA." Branscomb v. Sec'y of Navy, 461 F. App'x 901, 905 (11th Cir. 2012) (citations omitted); 42 U.S.C. § 12203(a) ("No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter.").

---

[17] "The term 'qualified individual' means an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). "The term 'disability' means, with respect to an individual-- (A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment . . . ." 42 U.S.C. § 12102(1).

[18] "The term 'reasonable accommodation' may include . . . job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities." 42 U.S.C. § 12111(9)(B).

In the absence of direct proof of discrimination and/or retaliation in violation of the ADA, courts utilize the McDonnell Douglas burden-shifting framework. See Thomas v. Dolgencorp, LLC, 645 F. App'x 948, 950 (11th Cir. 2016) ("We analyze ADA discrimination claims under the McDonnell Douglas burden-shifting analysis applied to Title VII employment discrimination claims." (citing Earl v. Mervyns, Inc., 207 F.3d 1361, 1365 (11th Cir. 2000))); see also Farley v. Nationwide Mut. Ins. Co., 197 F.3d 1322, 1336 (11th Cir. 1999) ("We review such [ADA retaliation] claims under the same rubric used for Title VII retaliation claims [i.e., the McDonnell Douglas framework]." (citations omitted)). To establish a prima facie case of ADA discrimination, an employee must show: (1) a disability; (2) that she was otherwise qualified to perform the job; and (3) that she was discriminated against based upon her disability. Cleveland v. Home Shopping Network, Inc., 369 F.3d 1189, 1193 (11th Cir. 2004) (citations omitted). To establish a prima facie case of ADA retaliation, an employee must show: (1) that she engaged in an activity protected by the ADA; (2) that she suffered an adverse employment action; and (3) that the protected activity was causally connected to the adverse employment action. Branscomb, 461 F. App'x at 905 (citing Garrett v. Univ. of Ala. at Birmingham Bd. of Tr., 507 F.3d 1306, 1315-16 (11th Cir. 2007)). Under either theory, once a

*prima facie* case has been established, the employer has the burden of articulating a legitimate, nondiscriminatory reason for the challenged employment decision, which the employee must then demonstrate to be a pretext designed to mask discrimination/retaliation. <u>Cleveland</u>, 369 F.3d at 1193 (citations omitted); <u>Branscomb</u>, 461 F. App'x at 905 (citations omitted).

Here, even assuming *arguendo* that Plaintiff has exhausted her administrative remedies[19] and has presented a *prima facie* claim of ADA discrimination/retaliation, Defendant has proffered unrebutted nondiscriminatory reasons for terminating Plaintiff's employment. <u>See</u> Section III.A.2, *supra*. As discussed above,

---

[19] Defendant argues that Plaintiff is barred from bringing an ADA retaliation claim because "it is beyond the scope of her EEOC charge." (Doc. 31-2, at 21 n.18.) Specifically, Defendant argues that Plaintiff only marked the boxes on her Charge for discrimination based on her "sex" and her "disability," but did not mark the box for "retaliation" and the body of her Charge does not contain any reference to retaliation for Plaintiff having engaged in a protected activity. (<u>Id.</u>) Viewing the evidence and factual inferences in the light most favorable to Plaintiff, however, Plaintiff has alleged that she submitted a timely and sufficient charge to the EEOC alleging sex and disability discrimination as well as retaliation in violation of the ADA with regard to her termination. The Court is hesitant to dismiss Plaintiff's ADA retaliation claim for failure to exhaust administrative remedies given that it appears reasonable in this case for Plaintiff's claim of ADA retaliation to be considered to be "like or related to, or [to grow] out of" the allegations of sex and disability discrimination contained in her Charge and intake questionnaire. <u>See</u> <u>Pizzini v. Sec'y for Dep't of Homeland Sec.</u>, 495 F. App'x 991, 994 n.3 (11th Cir. 2012); <u>see also</u> <u>Sanchez v. Standard Brands, Inc.</u>, 431 F.2d 455, 460-61, 465 ("The scope of an EEOC complaint should not be strictly interpreted" as courts are "extremely reluctant to allow procedural technicalities to bar claims brought under Title VII.") (internal quotations and citations omitted); <u>Gregory v. Georgia Dep't of Human Res.</u>, 355 F.3d 1277 (11th Cir. 2004) (employee's retaliation claim not administratively barred by her failure to only mark "race" and "sex" boxes on EEOC charge where employee's retaliation claim was "inextricably intertwined with her complaints of race and sex discrimination" and any subsequent EEOC investigation would have "reasonably uncovered any evidence of retaliation."). Accordingly, the Court will consider her ADA retaliation claim on its merits.

all of Plaintiff's arguments of pretext and facts in support thereof under her FMLA retaliation claim have been found insufficient to create a genuine issue of material fact, and the Court can find no reason why these same arguments would have any further success under her ADA-related claims. Moreover, Plaintiff has offered no additional facts or distinguishing arguments of pretext in support of her ADA-related claims.

Accordingly, because Plaintiff has failed to present evidence sufficient to permit a reasonable factfinder to conclude that the reasons proffered by Defendant for her termination were mere pretext or, more importantly, to create a genuine issue of material fact concerning Defendant's alleged unlawful intent, her ADA discrimination and retaliation claims cannot survive summary judgment.

## C. Title VII Claims

In Count III of her complaint, Plaintiff alleges that Defendant "discriminated against Plaintiff for [sic] violation of [Title VII]" because she was "constructively discharged because Defendant did not want to continue making reasonable accommodations for her disability." (Compl. ¶¶ 14, 18.) While not specifically pled by Plaintiff in her complaint, it is clear from the surrounding circumstances that Plaintiff's Title VII claim relies on the theory that Mr. Edouard's decision to terminate her employment was based on her gender (*i.e.*, because

she is female). Title VII prohibits employers from "discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1); see also 42 U.S.C. § 2000e-2(m) (employment actions where race, color, religion, sex, or national origin was a motivating factor are unlawful, even though other factors also motivated the action). Similar to the ADA, Title VII also prohibits employers from retaliating "against any of his employees or applicants for employment . . . because he has opposed any practice made an unlawful employment practice by [Title VII], or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]." 42 U.S.C. § 2000e-3(a). Notably, Plaintiff has only alleged a discrimination claim – as opposed to a retaliation claim – under Title VII. (See Compl. ¶¶ 14-19.)

The proper framework for analyzing single-motive discrimination claims based on circumstantial evidence is the McDonnell Douglas burden-shifting framework.[20] Flowers, 803 F.3d

---

[20] Discrimination claims relating to race, color, religion, sex, or national origin brought under Title VII and Section 1983 may be considered under either a "mixed-motive" or "single-motive" theory. Quigg v. Thomas Cty. Sch. Dist., 814 F.3d 1227, 1235 (11th Cir. 2016). A discrimination claim may be successful under the mixed-motive theory by showing that unlawful bias was a motivating factor for an adverse employment action, even though other factors also motivated the action. Id. (citations omitted). Single-motive claims require a showing that bias was the "true reason" for the adverse action.

at 1335. To establish a *prima facie* case of sex discrimination, Plaintiff must show that: (1) she is a member of a protected class; (2) she was qualified for the position; (3) she suffered an adverse employment action; and (4) she was replaced by a person outside her protected class or was treated less favorably than a similarly-situated individual outside her protected class. See <u>Maynard v. Bd. of Regents of Div. of Universities of Florida Dep't of Educ. ex rel. Univ. of S. Florida</u>, 342 F.3d 1281, 1289 (11th Cir. 2003). Similar to her FMLA retaliation and ADA discrimination/retaliation claims, once Plaintiff has established her *prima facie* case, Defendant has the burden of articulating a legitimate, nondiscriminatory reason for the challenged employment decision, which Plaintiff must then

---

<u>Id.</u> (citations omitted). Direct or circumstantial evidence may be utilized to establish discrimination under either theory. <u>Id.</u> While the <u>McDonnell Douglas</u> framework is proper for examining single-motive discrimination claims based on circumstantial evidence, mixed-motive discrimination claims based on circumstantial evidence should be analyzed using the framework set forth in <u>White v. Baxter Healthcare Corp.</u>, 533 F.3d 381 (6th Cir. 2008). <u>Quigg</u>, 814 F.3d at 1232. Under the <u>White v. Baxter Healthcare Corp.</u> framework, an employee asserting a mixed-motive discrimination claim "need only produce evidence sufficient to convince a [reasonable] jury that: (1) the [employer] took an adverse employment action against the [employee]; and (2) a protected characteristic was a motivating factor for the [employer's] adverse employment action." <u>Id.</u> (citing <u>Baxter Healthcare Corp.</u>, 533 F.3d at 400). Like the single-motive analysis under the <u>McDonnell Douglas</u> framework, the employee "will always survive summary judgment if he presents circumstantial evidence that creates a triable issue concerning the employer's discriminatory intent." <u>Id.</u> at 1240 (quoting <u>Smith</u>, 644 F.3d at 1328). To date, Plaintiff has not explicitly asserted that Defendant acted with mixed-motives when it terminated her employment, and thus it would not be improper to only consider her gender discrimination claims under a single-motive theory. See <u>E.E.O.C. v. TBC Corp.</u>, 532 F. App'x 901, 902-903 (11th Cir. 2013) (to pursue a mixed-motive theory of discrimination, the plaintiff must argue that the case involved mixed-motives at some point in the proceedings). Regardless of which theory Plaintiff pursues, however, Plaintiff's sex discrimination claims fail due to her failure to create a genuine factual dispute that she was terminated, even in part, because of her gender.

demonstrate to be pretextual. See Burdine, 450 U.S. at 253; Flowers, 803 F.3d at 1336. Again, however, establishing the elements of the McDonnell Douglas framework alone is not necessarily sufficient to survive summary judgment, as the critical decision that must be made is whether the employee has "created a triable issue concerning the employer's discriminatory intent." Flowers, 803 F.3d at 1336 (citing Smith, 644 F.3d 1321, 1328 (11th Cir. 2011)).

Here, like her ADA claims, even assuming *arguendo* that Plaintiff has presented a *prima facie* claim of sex discrimination, Defendant has proffered unrebutted nondiscriminatory reasons for terminating Plaintiff's employment. See Sections III.A.2, III.B, *supra*. As discussed above, all of Plaintiff's arguments of pretext and facts in support thereof under her FMLA retaliation claim have been found insufficient to create a genuine issue of material fact, and like her ADA discrimination/retaliation claims, the Court can find no reason that these arguments would fare any better under the banner of a Title VII sex discrimination claim. Moreover, Plaintiff has offered no additional facts or distinguishing arguments of pretext in support of her sex discrimination claim. Indeed, Plaintiff has produced no evidence demonstrating that gender-based animus actually factored into Defendant's decision to terminate her employment, such as remarks or statements

indicative of an impermissible discriminatory nature or the existence of any harbored bias against women. While Plaintiff makes conclusory allegations regarding alleged gender bias held by Mr. Edouard and/or Mr. Newton, the relevant admissible evidence used to support these conclusions does not bear out these claims even on their face, and thus Plaintiff's allegations have no probative value. See Bryant, 382 F. App'x at 917. Therefore, Plaintiff has failed to present evidence sufficient to permit a reasonable factfinder to conclude that the reasons proffered by Defendant for her termination were mere pretext or, more importantly, to create a genuine issue of material fact concerning Defendant's alleged unlawful intent. Accordingly, her sex discrimination claim cannot survive summary judgment.

## IV. CONCLUSION

Even assuming *arguendo* that Plaintiff has exhausted her administrative remedies and has presented a *prima facie* case of discrimination/retaliation where required, Defendant has proffered unrebutted nondiscriminatory reasons for terminating her employment. It is clear from her filings and deposition testimony that Plaintiff primarily takes issue with the work ethic and management-style of her former supervisor, Mr. Edouard, in addition to his allegedly false perception of her

job performance. Yet Plaintiff has provided no evidence that Mr. Edouard did not honestly believe his perceptions of her performance (even if objectively incorrect), and her disagreements with Defendant's business judgment are irrelevant to the Court's analysis. More importantly, however, Plaintiff has failed to provide probative evidence – as opposed to speculation, conjecture, or irrelevant averments – that discriminatory animus factored into Defendant's employment decisions. As such, Defendant is entitled to summary judgment on all of Plaintiff's claims.

For these reasons, Defendant's Motion for Summary Judgment (doc. 31) is **GRANTED**. The Clerk is directed to enter **JUDGMENT** in favor of Defendant on all of Plaintiff's claims, **TERMINATE** all other pending motions, if any, and **CLOSE** this case.

**ORDER ENTERED** at Augusta, Georgia, this _2nd_ day of March, 2017.

HONORABLE J. RANDAL HALL
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA